IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THADDEUS T. D'AMBROSIA, | : | |
| Plaintiff | : | Civil Action No. 1:06-CV-2182 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| PENNSYLVANIA CHAMBER OF | : | |
| BUSINESS AND INDUSTRY, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court is the motion for summary judgment (Doc. No. 21) filed by Defendants Pennsylvania Chamber of Business and Industry ("PCBI"), PCI Insurance, Inc., and PCI Services, Inc. (Collectively "Defendants"). The issue has been briefed by both sides (Doc. Nos. 23, 26, & 27) and is now ripe for decision. For the reasons that follow, the court denies in part and grants in part Defendants' motion for summary judgment.

**I.   BACKGROUND**

**1. Factual Background**

Plaintiff was hired by Defendants in August of 2000 for the position of Benefits Consultant, Field Sales.[1] (Doc. No. 26, Ex. 1 at 1.) Plaintiff worked in that position until 2003, at which point he became Manager of PCI Corporate Training, a position he maintained until August 5, 2004. (Doc. No. 1 ¶ 8.) On July 1, Plaintiff requested leave, pursuant to the Family and Medical Leave Act ("FMLA"), to undergo surgery to remedy a degenerative back condition. (Doc. No. 1 ¶ 9.) Plaintiff met with Defendants' Human Resources Director, Michelle Saellem,

---

[1] For purposes of this section, as always in a motion for summary judgment, all facts will be considered in the light most favorable to the non-moving party, the Plaintiff.

1

and discussed his leave on July 13, 2004. (Doc. No. 1 ¶ 10.) Ms. Saellem provided Plaintiff with the appropriate forms for his physician and approved his leave without mention that his position had been discontinued. (Doc. No. 1 ¶ 11.) In fact, Ms. Saellem indicated that Plaintiff would have a job when he returned from leave. (Id.) Plaintiff resumed work on August 5, 2004. (Doc. No. 22, Exhibit K at 6.) After working a full day, Plaintiff was informed that his position had been terminated due to a corporate reorganization. (Doc. No. 22, Exhibit O.)

Since his surgery, Plaintiff's back condition has worsened, leaving him with continual pain and numbness in his left leg. (Doc. No. 22, Exhibit C at 81-82.) Due to his termination, Plaintiff sought and received income from other sources, including Social Security Disability Insurance ("SSDI") and short and long-term benefits from American Fidelity Insurance, Defendants' provider. Although Plaintiff was labeled "disabled" in order to qualify for this alternative income, he asserts that he was never asked whether he considers himself totally disabled or is capable of performing past employment with accommodations. (Doc. No. 27 at 10.)

**2. Procedural Background**

Plaintiff initially pursued his employment discrimination claims administratively, by filing a notice with the Equal Employment Opportunity Commission ("EEOC") on or around May 21, 2005. (Doc. No. 1 ¶ 4-5.) After receiving a "right to sue letter" from the EEOC, Plaintiff filed a six-count complaint alleging that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, *et seq.*; Age Discrimination and Employment Act ("ADEA") 29 U.S.C. § 621, *et seq.*; Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601; and Pennsylvania Human Relations Act ("PHRA"). (Doc. No. 1.) By joint stipulation of

the parties, counts five and six, relating to the PHRA, were dismissed. (Doc. No. 3.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it," a court does not need to accept that version of the facts. Scott v. Harris, 127 S.Ct. 1769, 1776 (2007). In other words, there must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Anderson, 477 U.S. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III.     DISCUSSION**

   **1. "Employer" status of PCI Insurance and PCBI**

Before a claimant can make out a prima facie case under the ADA, ADEA, or FMLA, he must show that the employer qualifies under the respective statute as an "employer." An employer is defined in the ADA as a person "engaged in an industry affecting commerce and employing 15 or more employees. . . ." 42 U.S.C. § 12111(A). The ADEA requires twenty employees; the FMLA requires fifty. 29 U.S.C. § 630(b); 29 U.S.C. § 2611(A).

Defendants admit PCBI is a parent company to PCI Insurance, Inc. and PCI Services, but contend that the statutes at issue don't apply to PCI Insurance, Inc. and PCBI because they have no employees. (Doc. No. 23 at 6; Doc No. 2 ¶ 7.) Plaintiff has submitted evidence that implies substantial oversight, if not direct management, by PCI Insurance, Inc. and PCBI, thereby suggesting they should all be considered, with PCI Services, as one employer for purposes of the claims. The Third Circuit has not addressed parent-subsidiary liability in the ADA context, but generally supports the borrowing of standards from one employment discrimination statute to another. Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153 (3d Cir. 1995) ("[T]he ADA, ADEA, and Title VII all serve the same purpose–to prohibit discrimination in employment. . . . Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well."). Courts have applied the multi-factor test originally used in labor disputes and Title VII cases to ADA and ADEA claims. See EEOC v. Chemtech Intern. Corp., 890 F.Supp. 623, 625 (S.D.Tex 1995) (finding two organizations as one integrated employer under the ADA after analyzing the Title VII multi-factor test); Beckwith v. Int'l. Mill Svs., Inc., 617 F.Supp. 187 (E.D. Pa. 1985) (applying the same five-factor test to an

ADEA claim); Berkowitz v. Allied Stores of Penn-Ohio, Inc., 541 F.Supp. 1209 (E.D. Pa. 1982) (discussing the multi-factor test and other tests to examine corporate identity under discrimination in employment statutes). Thus, the Court will use the following factors to determine whether interrelated companies should be deemed one employer for purposes of the claims here: interrelation of operations, centralized control of labor relations, common management, and common ownership. Chemtech, 890 F.Supp. at 625.

Plaintiff's employment agreement is printed on PCI Insurance, Inc. letterhead; it discusses PCI Insurance, Inc.'s compensation policies, states PCI Insurance, Inc.'s liability, and specifically discloses the conditions of "termination of employment *with PCI Insurance, Inc.*" (Doc. No. 26, Ex. 1 at 1 (emphasis added).) All of these facts indicate an interrelationship of labor relations and operations, if not direct employment by PCI Insurance, Inc. Plaintiff was required to "obtain knowledge of all products, policies, and processing applications sold through PCI Insurance, Inc." and to report to the Director of Sales and Marketing of PCI Insurance, Inc., which indicates interrelated management. (Id. at 1-2.) That same agreement intermittently refers to PCBI, as well: an employee is to receive the "standard PCBI benefit package" and is welcomed to the "PCBI team," again indicating an interrelationship of management and labor relations. (Doc. No. 26, Ex. 1 at 2; Doc. No. 26, Ex. 5 at 1.) Accordingly, the Court finds that PCI Insurance, Inc., PCI Services, and PCBI shall be considered one employer for purposes of this claim.

**2. ADA Claims for Discrimination and Retaliation**

To make a prima facie case under the ADA, a plaintiff must establish that he is a disabled person within the meaning of the ADA; he must then demonstrate that he is otherwise qualified

5

to perform the essential functions of the job, with or without reasonable accommodations by the employer; finally, he must show that he suffered an adverse employment action because of discrimination. Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998). And "to establish discrimination because of a disability, an employer must know of the disability." Rinehimer v. Cemcolift, Inc., 292 F.3d 378, 380 (3d Cir. 2002).

Defendants argue that they unequivocally made the decision to fire Plaintiff without knowledge of his disability, and thus Plaintiff cannot make a prima facie case. Defendants support this contention with meeting notes, dated June 21, that discuss a corporate restructuring plan to terminate Plaintiff's position, coupled with Plaintiff's admission he did not inform Defendants of the back injury or upcoming surgery until July 1. (Doc. No. 22, Ex. A; Doc. No. 22, Ex. C at 166.) Yet, Plaintiff suggests that the hand-written notes are not conclusive. He points out that there are different copies of meeting minutes marked with the same date, and some notations reference an event that had not happened by the June 21 meeting date, indicating that the meeting may have taken place after the date suggested by Defendants, and therefore after Defendants learned of Plaintiff's disability. (Doc. No. 22, Exs. G & A; Doc. No. 10.) The Court finds that, when interpreting Plaintiff's evidence in the light most favorable to him, Defendants have failed to show an absence of material fact as to when the decision was made to terminate Plaintiff.

### A. Qualified individual with a disability

Defendants next argue that Plaintiff should be judicially estopped from claiming that he is "qualified" for his position, as required to make a prima facie case, because he alleged he is "disabled" and "unable to do previous work" by the Social Security Administration ("SSA") in

his SSDI benefits claim. The Supreme Court discussed the "seemingly divergent statutory contentions" of SSI/SSDI claims and ADA claims and found that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim" because the SSDI analysis, unlike an ADA analysis, "does not take the possibility of 'reasonable accommodation' into account." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 802-04 (1999). The Supreme Court explained that, first, the Court should require Plaintiff to explain any inconsistency where representations of an inability to work were made to the SSA while representations of an ability to work are being made to the Court, then the Court should analyze the reasoning. Id. at 802.  A plaintiff

> cannot simply ignore his previous statements to the SSA . . . .[t]o defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

Id., at 806-07. The Court should particularly consider whether the inconsistency is not about a purely factual matter, but rather implies a context-related legal conclusion. Id. at 802; Detz v. Greiner Industries, Inc., 346 F.3d 109, 116 (3d Cir. 2003) (applying Cleveland to inconsistent statements in SSDI and ADEA claims).

Plaintiff has explained that he was never specifically asked by the Social Security Administration ("SSA") whether he could do his prior job with an accommodation; he affirmatively states that he believes himself able to work, provided an accommodation is made for "a modified work schedule and modified training schedule." (Doc. No. 22, Ex. C at 149-50; Doc. No. 27 at 15.) The Supreme Court in Cleveland allowed a factually similar ADA claim to survive summary judgment. As interpreted by the Third Circuit, Plaintiff must give a contextual

explanation of the inconsistency to avoid judicial estoppel–the statements must have been made in light of the circumstances and definition of "disabled" used by the SSA in their determination of benefits. Detz, 346 F.3d at 118.

Like the plaintiff in Cleveland, Plaintiff explains that he never stated to the SSA he was unable to work without accommodation, and unlike the Plaintiff in Detz, Plaintiff did not reiterate his claim of total disability to the SSA in multiple attempts to receive benefits. Rather, Plaintiff applied once over the phone, at the request of Defendants. (Doc. No. 22, Ex. C.) Neither does it appear that his representations to American Fidelity Assurance for the purposes of attaining long-term disability benefits considered his ability to work *with accommodations*. (Doc. No. 23 at 15.)

      **B.**     **Disabled or regarded as disabled**

Defendants next argue that Plaintiff fails to state a claim under the ADA because he was neither "disabled" nor "regarded as" disabled by his employer on the date of his termination. These arguments are unavailing. Under the ADA statute, an individual is defined as disabled if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2); Rinehimer v. Cemcolift, Inc., 292 F.3d 375 (3d Cir. 2002). Plaintiff must demonstrate that he has an impairment "that prevents or severely restricts [him] from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002) (citing 29 CFR §§ 1630.2(j)(2)(ii)-(iii) 2001)). Plaintiff states in his deposition that he is substantially limited in the major life activities of standing and walking, an assertion apparently supported by his doctor's report and

the determination of disability made by the SSA. (Doc. No. 22, Ex. C at 153, 197-203.) This evidence is enough for Plaintiff to demonstrate he has a physical impairment that substantially limits the major life activity of standing for more than two hours at a time. Therefore, Plaintiff has produced sufficient evidence from which it might be concluded that he is disabled. The Court need not delve into the more difficult assessment of whether Plaintiff demonstrated enough evidence to show Defendants "regarded [him] as" disabled.

### C. Adverse employment action because of discrimination

Because the Court finds that Plaintiff has set forth enough evidence to make a prima facie case of discrimination under the ADA, the Court will next consider Defendants' contention that they are entitled to summary judgment because they provide a legitimate non-discriminatory reason for Plaintiff's termination.

Defendants and Plaintiff disagree as to whether this case is a "pretext" case, or a "mixed-motive case," the distinction being whether Plaintiff has to ultimately show that the discriminatory intent was the determinative factor in a decision (a pretext case), or only one substantial motivating factor for the decision (a mixed-motive case). See Watson v. Se. Pennsylvania Transp. Auth., 207 F.3d 207 (3d Cir. 2000) (discussing mixed-motive and pretext cases and the respective burdens required). A mixed-motive analysis applies when Plaintiff has put forth direct evidence of discrimination; a pretext analysis applies if Plaintiff has put forth only circumstantial evidence of discrimination. Shellenberger v. Summit Bancorp, 318 F.3d 183 (3d. Cir. 2003); Watson, 207 F.3d at 215. The Court finds that Plaintiff fails to meet either standard.

At a minimum, Plaintiff admits he is required to produce "direct evidence that decision-

makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089 (3d Cir. 1995) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)). Despite Plaintiff's contention, the Court finds he has no evidence to support a claim that his age or disability were considered in reaching the decision to terminate his employment.

Plaintiff asserts that evidence "that the meeting at which the elimination of his position was discussed did not occur until sometime after he gave notice of his need for a medical leave[,] . . . in addition to the obviously ill-founded arguments about who Plaintiff worked for, requires this Court to disbelieve the Defendants' assertions." (Doc. No. 27 at 19.)  However, neither of these assertions suggests that Plaintiff's disability or age was a causal factor in the adverse employment decision, let alone a substantial factor or a motivating factor. In fact, Plaintiff has shown no reason or suggestion that Defendants terminated him *because of* his age or disability, only that they may have been aware of his intention to take leave and/or his disability at the time they made the termination decision. Such awareness is insufficient to meet the causation required in either the "mixed-motive" or the "pretext" test, or to sufficiently undermine the employer's credibility that would enable the fact finder to disbelieve the remaining rationales. Fuentes v. Perskie, 32 F.3d 759 (3d. Cir. 1994) (allowing a plaintiff to meet his burden if he shows that the employer's proffered business reason is sufficiently implausible, incoherent, and unworthy of credence). Indeed, three other employees without known disability and who had not engaged in protected activity were terminated the same day as Plaintiff. (Doc. No. 22, Ex. C at 245, 252.) Thus because Plaintiff has failed to produce evidence that would support a finding that his disability played a role in the decision to terminate him, let alone that it was a motivating part or

a determinative factor of that decision, his claim cannot survive a motion for summary judgment.

**3.     ADEA claim**

For Plaintiff to make out a prima facie case for age discrimination under the ADEA, he must show:

> (1) he was a member of a protected class, i.e., that he was over forty years of age; (2) he is qualified for the position; (3) he suffered an adverse employment decision; and (4) he was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination or, in a reduction in force situation, the employer retained someone similarly situated to him who was sufficiently younger.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2005).  After a prima facie case has been made, a burden-shifting analysis like that in an ADA claim applies, depending on whether a plaintiff has provided direct evidence or indirect evidence of discrimination. Anderson v. Consolidated Rail Corp., 297 F.3d 242, 248-50 (discussing Plaintiff's burden in an ADEA claim after demonstrating direct or indirect evidence); Connors v. Chrysler Financial Corp., 160 F.3d 971, 973 (3d Cir. 1998) ("When evaluating ADEA discrimination claims based on indirect evidence, we apply a 'slightly modified version' of the three-step McDonnell Douglas shifting burden analysis.").  Because Plaintiff demonstrated even less evidence to support his ADEA claim and he has been unable to provide any proof other than a mere allegation that he was discriminated against in favor of someone younger, his claim cannot lie. Anderson, 297 F.3d at 250.  Even if Plaintiff were able to make out a prima facie claim that someone similarly situated but sufficiently younger was favored, Plaintiff has proffered no evidence to show that his age was a consideration in the decision to terminate his employment. Summary judgment must be granted where a nonmovant's evidence is merely speculative. Anderson v. Liberty Lobby, 477

U.S. 242, 249-50 (1986). Accordingly, the Court grants Defendants' motion for summary judgment on this count.

**4.     FMLA claim**

Defendants claim that there is not a question of material fact and they are entitled to judgment as a matter of law on Plaintiff's interference with FMLA claim because they had already made the decision to fire Plaintiff before he requested FMLA leave.[2] Defendants rely exclusively on the unreported case Reinhart v. Mineral Techs. Inc., 2006 U.S. Dist. LEXIS 89279 (E.D. Pa. Nov. 27, 2006), to support their contention. Reinhart states, "[N]o FMLA violation occurs when an employer has already decided to terminate the employee before the employee requests leave." Id., at *40-41 (citations omitted).

Plaintiff admits that the decision to fire him had been made before he went on FMLA leave, but argues that the decision was not made "until and because he requested leave." (Doc No. 27 at 22.) In support of his theory, Plaintiff argues that the inconsistent meeting notes from June 21 show that the decision to terminate was made after his requested leave. Furthermore, he argues that the decision not to tell Plaintiff until he returned from leave that he was terminated was an attempt by Defendants to hide the fact that the decision to fire him because of his request for FMLA leave. Unlike Reinhart, it is not "undisputed that the decision to terminate was made

---

[2]Plaintiff's brief also discusses an FMLA retaliation claim, but the retaliation claim (29 U.S.C. § 2615(a)(2)) is a distinct cause of action from the interference claim (29 U.S.C. § 2615(a)(1)).See Bearley v. Friendly Ice Cream Corp., 322 F.Supp.2d 563 (M.D. Pa. 2004); Bachelder v. Am. W. Airlines Inc., 259 F.3d 1112 (9th Cir. 2001); Strickland v. Water Works and Sewer Bd., 239 F.3d 1199 (11th Cir. 2001). Because Plaintiff's complaint only puts Defendants on notice as to an interference claim, the Court declines to discuss the retaliation issue at this time. The Court will, however, grant Plaintiff leave to amend his complaint to include any FMLA retaliation claim that he believes in good faith arises from the underlying events.

before [Plaintiff] requested leave." Accordingly, the Court holds that Plaintiff has raised a genuine issue of material fact as to whether the decision to terminate his employment was made before he requested leave pursuant to the FMLA, and thus summary judgment on the FMLA interference claim is denied.

## IV.  CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's claims of discrimination and retaliation under the ADA (counts I and II), as well as Plaintiff's claim under the ADEA (count III), are hereby dismissed, and Defendants' motion for summary judgment is granted as to these claims. Defendants' motion for summary judgment on Plaintiff's claim of interference with FMLA is denied. Plaintiff will be granted leave to amend his complaint to allege retaliation with FMLA in accordance with the order.

An order confirming this judgment follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THADDEUS T. D'AMBROSIA,** | : | |
| Plaintiff | : | Civil Action No. 1:06-CV-2182 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **PENNSYLVANIA CHAMBER OF** | : | |
| **BUSINESS AND INDUSTRY, et al.,** | : | |
| Defendants | : | |

**ORDER**

**AND NOW**, on this 30th day of September, 2008, upon consideration of Defendants' motion for summary judgment (Doc. No. 21) for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss the ADA claim for discrimination is **granted**;

2. Defendants' motion to dismiss the ADA claim related to retaliation is **granted**;

3. Defendants' motion to dismiss Plaintiff's ADEA claim for discrimination is **granted**;

4. Defendants' motion to dismiss Plaintiff's interference with FMLA claim is **denied**. As discussed in the accompanying memorandum, Plaintiff is given leave to file an amended complaint in order to raise a retaliation under the FMLA claim within ten (10) days of this Order.

Judgment is hereby entered in favor of Defendants as to counts I, II, and III.

s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
